## APRIL, 1898.

M. L. RANDOLPH ET AL. v. FARMERS' LOAN & TRUST CO. ET AL.

No. 606.—Decided January 24,—April 14, 1898.

**1. Corporations — Receivership — Mortgage — Foreclosure — Earnings — Adjustment of Equities.**

In the adjustment of claims upon the settlement of a receivership of a corporation, as between the holders of claims against the corporation prior to the receivership and holders of mortgages foreclosed upon the property, under Rev. Stats., art. 1490, the former have the superior lien upon the earnings of the corporation in the hands of the receiver, and are entitled to have such earnings fund reimbursed from proceeds of the sale, for money diverted therefrom for the betterment of the corpus of the estate. (Pp. 608 to 615.)

**2. Same—Taxes Paid From Earnings.**

State, county and city taxes accruing before and during the receivership are a first lien upon the property, but not upon the earnings, and money paid to discharge same was not chargeable against the earnings fund, which should be reimbursed therefor in the final adjustment of equities between holders of such claims against it and the mortgagees. (P. 612.)

**3. Same—Cost of Insurance.**

Proceeds of insurance policies were correctly allowed to the mortgagees in such adjustment, but insurance premiums paid were properly chargeable against them, being an expense incurred in protecting the property for the benefit of the persons ultimately determined to be the beneficiaries thereof, that is, the mortgagees. (Pp. 612, 613.)

**4. Same—Mortgage Bonds—Interest Paid From Earnings.**

So the earnings fund should be reimbursed for money paid by the receiver in discharge of interest on first mortgage bonds, though the receivership was procured by second mortgagees, and such payment made, at their instance and for their protection, in order to prevent the maturity and foreclosure of the first mortgage,—the superior lien of the holders of claims against the corporation on the earnings being one given by statute, and not a mere equity growing out of diversion of funds under the rule in Fosdick v. Schall, 99 U. S., 235. (Pp. 613, 614.)

ERROR to the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

Randolph and others, intervenors in the receivership proceedings upon claims accruing against the corporation before the appointment of the receiver, prosecute writ of error from a judgment of the Court of Civil

Appeals reversing that of the trial court which set aside a part of the proceeds of the sale of the property under foreclosure to reimburse the fund derived from the earnings of the corporate property while in the receiver's hands (upon which they claimed a lien under the statute superior to the claims of the mortgagees) for expenditures made by the receiver, under orders of the court, from such earnings.

*Coke & Coke* and *Dudley G. Wooten*, for plaintiff in error. (From petition for writ of ·error.)—The Court of Civil Appeals erred in its conclusion of law that the statutes of Texas regulating receiverships of this kind do not restrain the expenditures that may be made out of the income of the property to operating expenses, and in holding that the corpus of the property in the hands of a purchaser at foreclosure sale can only be charged with the value of betterments made for the benefit of general unsecured creditors of the mortgagor.

The Court of Civil Appeals has erred in holding, as a conclusion of law, that the various orders of the court made upon the application of the receiver and avowedly for the preservation of the property and the protection of "all the creditors" are judicial determinations of the propriety and legality of the expenditures of which these intervenors can not now complain, they having been among those for whom the expenditures were presumably made. In opposition to this we contend, that all such orders made during the progress and administration of the receivership are merely effective to the extent of showing that the expenditures were necessary and legitimate ones to be made by the receiver, but that they do not, and can not be held to conclude the rights of any unsecured general creditor in a final accounting and winding up of the administration of the property by the court through its receiver. Such orders are absolutely necessary to be made for the operation of the property, and it would be manifestly impossible and injurious to permit them to be contested and delayed for the purpose of determinining how the particular expense is to be charged in the account between the receiver and the creditors; that remains for the final decree and adjustment of the rights of the parties.

The Court of Civil Appeals has erred in its conclusions of law to the effect that the moneys derived from the operation of the road in this case, and which were expended for taxes, insurance premiums, interest on first mortgage bonds, etc., were such expenses as could be charged against the earnings fund or income, and that the general unsecured creditors of class sixth under our law have no right to demand the restoration of such moneys for the purpose of contributing to the net earnings.

The Court of Civil Appeals has erred in its whole construction of the Acts of 1887 and 1889 on the subject of receivers, in that it practically holds, that creditors of the sixth class, who are given ·by the statute a lien on the net earnings "to the exclusion of all mortgage action," may be entirely shut out from the benefit of such lien by the mere fact

that the court has, by ex-parte orders entered in the progress of the receivership, dissipated and expended the whole of the earnings for any character of expense that the court may deem proper; and that the creditors of the sixth class really have no right to claim reimbursement of income, except when expended for betterments.

. *Harris, Etheridge & Knight,* for plaintiffs in error, Dallas Electric Co., J. L. Starke and G. H. Ryan.—The claim of the Dallas Electric Company, being for electricity supplied to the Dallas Consolidated Traction Street Railway within a reasonable time before the appointment of a receiver, has a superiority in equity to any other claim represented herein. McIlhanny v. Trust Co., 80 Texas, 1; 6 Rapalje and Mack's Digest of Railway Law, 1194; Farmers' Loan & Trust Co. v. Railway, 53 Fed. Rep., 182; Wood v. Railroad, 70 Fed. Rep.; 741; Railway v. Lamont, 69 Fed. Rep., 23.

The District Court having awarded the Dallas Electric Company priority over the other plaintiffs in error, and the plaintiffs in error, who are the only party prejudiced by the order of priority complaining, this court should affirm the judgment of the District Court awarding such priority, if there are any funds or property out of which it can be paid.

A mortgage creditor is entitled to no priority in the funds realized from the insurance policy and in the distribution of such proceeds. They must be treated as current earnings, there being no other classification known to the law which would include them. Sheldon on Subrogation, 273; 2 May on Ins., sec., 456; Cameron v. Fay, 55 Texas, 58; 4 Joyce on Ins., sec. 3563.

*Word & Charlton* and *Thompson & Wood,* for defendants in error, filed a motion for rehearing upon the following grounds:—The court erred in holding that the statute referred to gave a lien on the earnings of the receivership in favor of the claim of plaintiffs in error, as against the first mortgage bonds. The fifteenth article of the Act of 1887 provides that such debts, when determined, shall be paid out of the earnings of the receivership, to the exclusion of mortgage action. We think this refers to the mortgage on which the action is based, out of which the receivership grew.

The court erred in holding, that the $23,140, paid on the interest of the first mortgage bonds, under order of the court, before the trustee of such mortgage became a party to the action, was a diversion of the earnings which should be restored by the owners of the bonds, and that same be charged, on final settlement, against the corpus and made a lien thereon. Rainbolt v. March, 52 Texas, 246.

The court erred in holding the payment of $12,897.73 taxes, under order of the court, before the intervention of the trustee of the first mortgage bond holders in the action, was a diversion of the earnings of the receivership in the interest of said bond holders, and that the same

should be restored by them or made a charge and lien on the corpus in the hands of the purchasers at foreclosure sale. Sayles' Stats., arts. 4138, 4206; Scogin v. Perry, 32 Texas, 27; Act of 1887, art 6.

The court erred in holding the $5343.27 insurance premiums were not operating expenses and necessary to be paid out of the earnings of the receivership, and in holding the same to be chargeable against the corpus in the hands of the purchaser.

The court erred in holding that the $15,000 paid to the special commissioner, Tucker, was not court costs or expenses which should be paid out of the earnings of the receivership.

The Act of 1889 amending certain articles of the Act of 1887 had the effect to repeal article fifteen of the last named act and no lien existed in favor of plaintiffs in error.

The findings of the master and the judgment of the trial court that there were $19,586 of net earnings, are not sustained by the record.

DENMAN, ASSOCIATE JUSTICE.—The Dallas Consolidated Street Railway Company, incorporated under the laws of Texas, conveyed all its property by trust deed, bearing date July 1, 1887, but not really executed, according to the report of the special master hereinafter referred to, until the latter part of July or first of August, 1887, to the Farmers' Loan and Trust Co., of New York, trustee, to secure its bonds amounting to $250,000, which instrument will be hereinafter referred to as the first mortgage. Subsequently the property of said Company was acquired by the Dallas Consolidated Traction Railway Company, incorporated under the laws of Texas, subject to said mortgage, and this latter Company, on August 1, 1890, conveyed all its property, including the above, to the Fidelity Insurance Trust and Safe Deposit Company of Philadelphia, trustee, to secure its bonds amounting to $750,000, which instrument was expressly made subject to said first mortgage and will be hereinafter referred to as the second mortgage. Defaults having occurred under both, the trustee in the second mortgage, on October 15, 1892, filed its petition in the District Court of Dallas County, Texas, seeking a foreclosure of the lien of said second mortgage and the appointment of a receiver, and said court, on October 17, 1892, appointed a receiver as prayed for, who qualified and operated the property from the date of his appointment until June 20, 1895, when he turned it over to the purchaser at the sale under the first mortgage, the trustee therein having intervened September 19, 1894, and secured a decree foreclosing same, and the property having been sold under such degree for $190,000 and such sale having been confirmed by the court May 8, 1895. The receiver from time to time reported to the court the various sums of money received and paid out by him and no question is made as to the correctness of his accounts. In other words it was not contended that he had failed to report any sum received or that any disbursement made by him during the administration of the trust was not authorized by law as far as he was concerned.

When however the court, on the final settlement of the affairs of the receivership, came to adjust the conflicting claims and equities of the first and second mortgagees and other creditors, it was contended by various creditors of the class mentioned in the following statute, "all judgments, claims, or causes of action when determined, existing against any corporation at the time of the appointment of a receiver, shall be paid out of the earnings of such corporation while in the hands of the receiver, to the exclusion of mortgage action; and the same shall be a lien on such earnings" (sec. 15, Genl. Laws, 1887, p. 121; Rev. Stats., art. 1490), that the receiver had from time to time during the progress of the receivership diverted the "earnings" upon which said statute gave them a superior lien to purposes beneficial to said first mortgagees, and that to the extent of such diversion the "earnings" fund should be reimbursed for their benefit from the corpus of the estate, either by fixing same as a lien thereon prior to the said mortgages, or by requiring same to be repaid out of the proceeds of sales thereof.

The court thereupon referred the receiver's reports to its Special Master in order to determine whether there were any "earnings" and if so how much, and to what extent and for whose benefit they had been diverted.

The Special Master by deducting what he considered operating expenses from the earnings of the property found that the net earnings during the receivership amounted to . . . . . . . . . . . . . . . .  $31,909.61

He also found that the following other sums had come into the receiver's hand:

Proceeds of sales of old material, etc . . . . . . . . . . . . .   2,881.78
Proceeds insurance policies . . . . . . . . . . . . . . . . . . .  27,490.01
Proceeds of unpaid receiver's certificates . . . . . . . .  11,500.00

Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  $73,781.35

Since none of these funds were used by the receiver in the payment of what the Special Master considered operating expenses, he was of opinion that they were trust funds in the receiver's hands for the benefit of the persons entitled thereto, and that "if this money was paid out by the receiver either to or for the benefit of the mortgage creditors, then the amount thereof should, upon a final distribution among the mortgage creditors of the proceeds of the foreclosure sale of the mortgaged property, be first deducted from the proceeds of sale and paid over to the parties for whom it was so held in trust by the receiver." He then found that "$70,789.46 of said sum of $73,781.35 held in trust by the receiver   *   *   *   was paid out by the receiver to or for the benefit of the mortgage creditors as follows:

"For the benefit of mortgage creditors.
On property bought prior to receivership . . . . . . . .  $ 3,245.18
On property bought during receivership . . . . . . . . .   17,137.42

On permanent improvements.................\$  7,070.10
On taxes..................................  12,897.73
On insurance premiums.....................   5,343.27
    To mortgage creditors.
Interest on first mortgage bonds.......... 23,140.00
To present owners of .property who represent first
    mortgage creditors....................   1,915.76
Deposited with the city and afterwards collected
    by said present owners................      40.00

    Total................................. \$70,789.46"

He then found that this \$70,789.46 should be paid from the proceeds of the sale, to the following parties:

Holders of said receiver's certificates........... \$11,500.00
Parties entitled to said "proceeds of insurance poli-
    cies ..........................................   27,490.01
To reimburse the earnings fund for the benefit of
    the creditors mentioned in the statute above
    quoted ........................................   28,917.72

    Total........ ................................. \$70,789.46

This last finding is based upon the further fact found by him that the disbursements above referred to as having been made by the receiver, together with another of \$2291.89 made in payment of old`claims, exhausted all the monies which came into his hands, and left nothing to be applied to the settlement of the three last mentioned claims except such monies, if any, as should be refunded from the proceeds of the sale. He further found, (1) that from the proceeds of the sale said \$11,500 receiver's certificates had been paid, and that thereby same were satisfied, as they should have been, out of the corpus of the property; (2) that said \$27,490.01 insurance money belonged partly to each of said mortgagees, stating their respective interests therein; and (3) that the following amounts should be allowed as a credit upon said \$28,917.72, viz: \$7267.76, \$532.60 and \$681.43 paid from proceeds of foreclosure sale upon various claims entitled to payment out of the earnings in preference to those included within said statute, the claims so paid being expenses of the receivership which had not been previously discharged under the head of "operating expenses" aforesaid. This reduced said \$28,917.72 to \$20,435.93, which `amount the Special Master finally advised the court to require the mortgagees to restore to the "earnings" fund, out of the proceeds of sale for the benefit of the creditors mentioned in said statute. The purchaser at said foreclosure sale, having made himself a party, and the trustees, filed various exceptions to the Special Master's report which are made the basis of the assignments hereinafter considered. Said report and exceptions coming on for hearing, the claimants under the second mortgage waived their right to any interest in said

$27,490.01 proceeds of insurance policies, and agreed that the court should cancel their claims thereto, which was accordingly done, and thereupon the court having heard the report and exceptions thereto overruled the exceptions, and confirmed the report, and charged the property in the hands of the purchaser with a lien in favor of the creditors mentioned in said statute to secure $19,586.23, the court having in all probability arrived at this sum by allowing as a credit on said $20,435.93 recommended by the Master some of the claims urged by the purchaser as having been paid by him as proper charges against the receiver's "operating expense" account, but which were not allowed by the Special Master. From this judgment the trustees under both mortgages and the purchaser appealed to the Court of Civil Appeals, assigning as error the various matters hereinafter considered.

The Court of Civil Appeals held that the earnings fund was properly chargeable with the following items paid by the receiver as aforesaid: $23,140 interest on first mortgage bonds, $8336.49 being that portion of the $12,897.73 taxes which accrued during the receivership, and the $5343.27 insurance premiums; and, since these items amount to more than the $19,586.23 finally found by the court below to be due such fund, they held that the trial court erred in holding that there were any net earnings, and therefore reversed and rendered the judgment in favor of appellants. Randolph and others, creditors of the class mentioned in said statute, have brought the case to this court by writ of error, complaining of said holdings of the Court of Civil Appeals. Thus we have the questions of law presented, as to whether such items, as well as others, were by the Special Master and trial court, in their findings aforesaid, properly held not chargeable against the earnings fund, in the final adjustment of the claims of the creditors mentioned in said statute upon said fund and of the mortgagees upon the corpus.

It is clear from the report that the $19,586.23 found as aforesaid to be still due the earnings fund was included in the $70,789.46 found by the Special Master to have been expended by the receiver "to or for the benefit of the mortgage creditors," for without that sum he would not have had the means to have made all such expenditures. Therefore if none of the things for which such expenditures were made were proper charges upon the earnings, as between the creditors mentioned in said statute and the mortgagees, then it would seem to be clear that there were earnings to the amount of said $19,586.23 which have been diverted from the earnings fund to and for the benefit of the mortgagees.

As to the $3245.18 paid to discharge liens "on property bought prior to receivership," the $17,137.42 paid "on property bought during receivership," and the $7070.10 paid "on permanent improvements," it is clear that they cannot be held legal charges against the earnings fund as between the parties to this controversy, for they are in no sense operating expenses, and that such payments were for the benefit of the mortgagees, since the Special Master found that all such property and improvements were sold and passed to the purchaser under the foreclosure,

and it was not shown that they did not enhance the value of the property to the amount of the expenditures.

The $12,897.73 paid "on taxes" consists of taxes accrued before the granting of the receivership, taxes accruing during the receivership, and of certain sums due the city of Dallas as a franchise tax. The first two are fixed by law as a first lien on the corpus of the property, but not upon the earnings. If the State, county and city to whom they were due had intervened in this suit seeking their collection by foreclosure of their liens, as did the mortgagees and the creditors mentioned in said statute, the decree must have been that the corpus of the property be sold, and the proceeds applied, first, to the payment of such taxes, and, second, to the satisfaction of the mortgages, and that the earnings be applied to the claims of the creditors mentioned in said statute as having a lien thereon. It follows that such taxes were not a charge against the earnings as between the parties hereto, and that if the court in the administration of the receivership caused the earnings upon which by virtue of the statute the creditors mentioned therein had a lien, to be paid in discharge of the first lien upon the corpus of the property, it was its duty in finally adjusting the equities of all the parties to cause to be restored to the earnings from the corpus the amount so diverted. If under the arrangement between the City of Dallas and the street car company the franchise tax was secured by first lien on the property, or probably if its prompt payment was necessary to the preservation of the company's easement in the streets, the same reasoning would seem to apply to it. The nature of the arrangement between the city and the company in reference thereto is not disclosed by the record, and therefore in deference to the findings of the master, that this payment was for the benefit of the first mortgage creditors, and was not a charge against the earnings, and the judgment of the trial court approving same, and we must assume that the facts were such as to justify such finding.

It will be observed from the Special Master's report that he allowed the mortgagees the $27,490.01 proceeds of insurance policies, as representing the property destroyed, and charged them with the $5343.37 paid out by the receiver for insurance premiums on these and other policies, or in other words held that such premiums were not charges against the earnings. Some of the creditors mentioned in said statute contend that the $27,490.01 should be classed as earnings, since the insurance was effected by the receiver and premiums paid out of the earnings, and the mortgage creditors were in no way interested in the contracts. On the other hand the mortgagees contend that it was the duty of the receiver to insure the property and to pay premiums out of the earnings, and that they should be allowed the proceeds of the policies as representing the property destroyed, but the premiums should be charged against the earnings and not against the corpus. Where a mortgagor or mortgagee insures the mortgaged property for his own benefit, he, having an insurable interest, is entitled to the proceeds of

the policy, the legal benefit of his contract, though it may result in his gaining an advantage and the other party sustaining a loss by the destruction of the property—there being in such a case no equities to adjust, the party is allowed his legal rights.    The legal effect of a policy of insurance issued to a receiver is entirely different.    He has no insurable interest, nor has he a right in his representative capacity to insure for the benefit of any particular class of creditors.    It is his duty as the representative of the court, in proper cases, to insure for the purpose of protecting the property for the benefit of such persons as may be ultimately determined to be the beneficiaries thereof, and a policy issued to him must be so construed as to effect that result.    Since it cannot be known in advance who such persons will be detemined to be, the court, having assumed charge of the property through its receiver, is authorized to represent them in effecting such insurance through him as it may deem proper for their protection, and to ultimately charge them with the expense thereof when they are so determined.    They are thus chargeable with the expense whether there be a loss or not, and are entitled to the insurance in case of loss.    In this case the mortgagees have been determined to be the real beneficiaries, since the entire property was not sufficient to satisfy their liens.    Therefore we are of opinion that the Special Master correctly allowed them the proceeds of the insurance policies and charged them with the premiums.    The mere fact that the earnings might be increased by the restoration and subsequent use of the property out of the insurance money under order of the court, does not affect the question, for the parties entitled to the earnings could not compel such restoration, and it is not to be presumed that the court would authorize it unless it was deemed to the interest of the beneficiaries.

It is shown by the record that the court, upon application of the trustee in the second mortgage and of the receiver, ordered the receiver from time to time to pay the interest on the bonds secured by the first mortgage in order to prevent their being declared due for non-payment thereof and foreclosed, and that said $23,140 "interest on first mortgage bonds" was paid by the receiver under such orders.    It is earnestly contended by the trustee in the first mortgage and the purchaser representing said bondholders, that, since the receivership was not granted upon their application, and since said payments of interest were made in order to prevent the maturity and foreclosure of their debt, and since they have not by their intervention asked any extraordinary equitable relief, but simply ask the enforcement of their strict contract rights, a court of equity will not raise any equities in favor of the creditors mentioned in the said statute by reason of the fact that such interest was paid in whole or in part out of the earnings, and that, therefore, this is not a case for the application of the doctrine of "diversion and restitution" announced in Fosdick v. Schall, 99 U. S., 235, and other cases based thereon.    We understand the Court of Civil Appeals to have substantially sustained this contention.    The answer to this is that the credi-

tors mentioned in said statute are not here appealing to the court to raise any such equities in their behalf as were accorded to unsecured creditors in the cases above referred to, but, on the contrary, they are simply asking the court to enforce their statutory right to have the earnings applied to the payment of their claims in preference to the mortgage. The case then comes to this. The court has before it on final hearing the bondholders insisting upon the subjection of the corpus to their contract lien, and the creditors mentioned in the statute insisting upon the enforcement of their statutory lien upon the earnings which the statute directs the court to enforce "to the exclusion of mortgage action," and it appears to the court that in the administration of the property it has paid out some of such earnings to the bondholders in partial discharge of their lien upon the corpus, and that it cannot carry out the mandate of the statute without requiring them to restore same. No facts are shown which would estop these creditors from insisting upon their statutory right. They did not even request the payments to be made, and some payments were made before any of them intervened herein. It may be that by reason of such payments the first bondholders were deprived of the opportunity of declaring their debt due and foreclosing same, and that the second bondholders and the receiver were thereby enabled to delay them; but all that resulted primarily from their not having taken the precaution to provide in their contract for the right to mature their debt under such circumstances, and it affords no reason for the court's refusal to enforce the statutory lien in favor of the creditors therein mentioned. We are therefore of opinion that the Special Master and the trial court correctly held that the interest paid could not be charged against the earnings, and that the sums diverted from such earnings to discharge such interest must be restored from the corpus.

It is not contended that the remaining items of $1915.76 and $40 could be charged against the earnings, as they were turned over to the purchaser by the receiver.

. It follows that we are of opinion that none of the sums constituting said $70,789.86 found by the Special Master to have been "paid out by the receiver to or for the benefit of the mortgage creditors" were proper charges upon the earnings as between the parties to this controversy, and that, since said $19,586.23 found by the court as balance of net earnings was included in such expenditures, it was properly fixed as a lien on the corpus unless the purchaser is entitled to some further credit thereon by reason of the claims we will now proceed to examine.

It is earnestly contended by the mortgagees and purchaser that said $11,500 receiver's certificates which have been paid out of the proceeds of the sale should be allowed as a credit on said $19,586.23. This would doubtless be true were it not for the fact found by the Special Master, which we cannot say as a matter of law was without evidence, that the proceeds of the sale of such certificates were included in said $70,789.46 paid by the receiver to or for the benefit of the mortgage

creditors. Such finding being true we do not think they should be deducted from the earnings. It is also contended that there should be deducted from such earnings the fee paid to the Special Commissioner out of the proceeds of sale, for selling the property under the foreclosure of the mortgages. The facts are that the mortgagees were before the court seeking the sale of the corpus upon which they had a contract lien, in satisfaction thereof, and the said creditors were there asking the enforcement of their statutory lien against the earnings, and we see no equitable ground upon which the court would have been authorized to compel the fund upon which the creditors had a statutory lien to bear any part of the expense of subjecting the corpus to the contract lien of the mortgagees. We are of opinion that the property subject to each lien was properly held to bear the expense peculiarly incident to the foreclosure thereof. To have deducted this fee from the earnings would have given the mortgage creditors a superior claim upon such earnings to that extent, which would have violated the spirit and letter of the statute. As bearing upon a similar question we cite Huddleston v. Kempner, 87 Texas, 372.

Being of opinion that the Special Master Richard Morgan's report finding net earnings to the credit of the statutory creditors was correct, and that the trial court did not err in confirming same, we must set aside the judgment of the Court of Civil Appeals and affirm the judgment of the trial court, which is accordingly done.

> *Judgment of Court of Civil Appeals reversed.*
> *Judgment of District Court affirmed.*

### ON MOTION FOR REHEARING.

DENMAN, ASSOCIATE JUSTICE.—In overruling the motion for rehearing we deem it proper to state that the three items which the Master found should be paid from the proceeds of the sale do not amount to $70,789.46 as shown by the extract from his report as given in our opinion. In order to make such amount the item of $28,917.72 should be $2881.73 greater. It may be that, in making up the transcript, some item of $2881.73 was omitted in copying the report. If not, this mistake was advantageous to plaintiffs in error and no one has made any complaint thereof.

*Motion overruled.*