FIRST NAT. BANK OF HOUSTON v.
J. I. CAMPBELL CO. et al.†

(Court of Civil Appeals of Texas. Nov. 30, 1910. Rehearing Denied Jan. 4, 1911.)

1. APPEAL AND ERROR (§ 394*) — APPEAL BOND—EXTENT OF APPEAL.

Where an appeal bond given by an intervening creditor in receivership proceedings on an appeal intended to be an appeal from an order dismissing intervener's petition during the proceedings, and from a final order of distribution, does not refer to the order dismissing the petition, there is no appeal from such order.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 394.*]

2. JUDGMENT (§ 650*) — JUDGMENT AGAINST RECEIVER—SCOPE—FINALITY.

A secured creditor intervened in receivership proceedings begun in 1905, and from a decree upon his claim made June 27, 1908, appealed, and on November 25, 1908, the Court of Civil Appeals reversed that decree, with instructions to the district court, after provisions as to interest and attorney's fees, to make the balance of the principal due to intervener a charge on the general fund, and, in pursuance of such instructions, the district court entered a judgment on February 10, 1909, making the balance of the principal a charge on the general fund, and entitling intervener to share as an unsecured creditor in the remaining assets. The property had been sold and the sale confirmed in 1909, and on June 29, 1909, a final decree of distribution was made, from which intervener appeals. Held, that the adjudication of the district court, entered February 10, 1909, under the instructions of the Court of Civil Appeals, was a final adjudication settling the rights of the intervener with reference to its share in the funds in the hands of the receiver.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 650.*]

3. CORPORATIONS (§ 566*)—RECEIVERSHIP PROCEEDINGS—DECREE OF FINAL DISTRIBUTION—STATUTES—"REMAINING ASSETS."

A final adjudication in receivership proceedings, after provisions made for interest and attorney's fees, adjudged that the balance remaining due on the principal due an intervening creditor should be a charge on the general fund, and that the creditor should be entitled to share as an unsecured creditor in the remaining assets. There was then in the hands of the receiver a fund representing the net assets derived by him from his operation of the corporation's property which had come into his hands, and also a fund derived by him from the proceeds of the property of the company. Thereafter a final decree of distribution awarded to such creditor a share in the general fund and in the remaining assets, but denied to it any share in the net earnings fund. Held, that, in view of Rev. St. 1895, art. 1490, providing that all claims against any corporation at the time of the appointment of a receiver, shall be paid out of the earnings of such corporation while in the hands of a receiver to the exclusion of mortgage action, the "remaining assets" did not include the net earnings fund.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 566.*]

4. CORPORATIONS (§ 566*)—CLASSES OF CREDITORS—STATUTES—VENDOR'S LIEN.

Rev. St. 1895, art. 1490, providing that claims against a corporation at the time of the appointment of a receiver shall be paid out of the receivership earnings to the exclusion of mortgage action, refers to any form of security which is in effect and substance a mortgage and includes a vendor's lien to secure notes given by the corporation.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 566.*]

5. CORPORATIONS (§ 566*) — SECURED CREDITORS—WHEN STATUS FIXED—STATUTES.

Under article 1490, Rev. St. 1895, providing that all claims existing against a corporation at the time of the appointment of a receiver shall be a lien on the earnings of the receivership to the exclusion of mortgage action, the status of a secured creditor is fixed at the date of the receivership or when by intervention it resorts to mortgage action, and the fact that it holds an unsatisfied balance when the foreclosure is completed does not change its status.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 566.*]

6. CORPORATIONS (§ 566*)—SECURED CREDITORS — MORTGAGEES — STATUTES — CONSTRUCTION.

Rev. St. 1895, art. 1490, relating to the status of creditors of a corporation in receivership, extends to all corporations and to any creditor insisting on mortgage security.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 566.*]

Appeal from District Court, Harris County; W. P. Hamblen, Judge.

Intervention by the First National Bank of Houston, a creditor, in receivership proceedings against the J. I. Campbell Company. From a final decree of distribution, intervener appeals. Affirmed.

L. B. Moody, for appellant. Spotts & Matthews, E. P. & Otis K. Hamblen, and Hunt, Myer & Townes, for appellees.

JAMES, C. J. This appeal arises in a receivership, which was granted in February, 1905, of the J. I. Campbell Company, the Tyler County Land & Lumber Company, and the Warren & Corsicana Pacific Railway Company, upon the application of I. L. and S. M. Campbell as creditors and stockholders of said corporations, and upon allegations that same were in immediate danger of insolvency.

The First National Bank became an intervener as a creditor of the J. I. Campbell Company in a large amount, their claim being secured in part by certain collateral, to wit, notes of the Tyler County Land & Lumber Company, aggregating $90,000, which were secured by a vendor's lien upon all the lands, mills, and other property of said company. The claim was acted upon, but the decree, in some details, was not satisfactory to the intervener, and an appeal was taken, which resulted in the reversal of the decree by the Court of Civil Appeals, with certain instructions to the trial court (114 S. W. 887), and in accordance with such instructions the trial court, at its January term, 1909, entered judgment for the amount of the notes, interest, and attorney's fees, foreclosing the vendor's lien, and securing same upon the lands, mills, and other property of said company, and directing that the proceeds of the sale thereof should be paid to

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error granted by Supreme Court.

said intervener and applied in the manner directed by the court, and that, as to any balance remaining due thereafter upon the principal, interest to February 14, 1905, and attorney's fees, intervener should be entitled to share as an unsecured creditor in the remaining assets of said Tyler County Land & Lumber Company. At the March term following, an order of sale was entered, the property sold, and the sale confirmed at the May term. Thereupon intervener filed a petition alleging that the value of its security had been depreciated by the use thereof by the receiver, and asking an equitable allowance to intervener for such depreciation. To this the court sustained a general demurrer, and dismissed the petition on June 25, 1909. On July 29, 1909, the court entered a final decree of distribution as to the Tyler County Land & Lumber Company, in which it is found that after crediting the proper proportion as the proceeds of the sale of its securities upon the amount due said intervener for principal, interest, and attorney's fees, there remained a balance due intervener of $85,713.93, but the court refused to allow intervener to share, as to such balance, as an unsecured creditor, in the remaining assets of said Tyler County Land & Lumber Company and decreed that as to the portion of said assets which consisted of the net earnings of the receivership, intervener should be excluded from sharing. The present appeal is taken from said decree of July 29, 1909. The above is substantially the statement of the nature and result of the case as presented in appellant's brief. Appellees concede its correctness, with the following additions, which we copy, because they serve to present the matters in question:

"First. The judgment rendered at the January term, 1909, in favor of appellant, made the balance of appellant's claim against the Tyler County Land & Lumber Company, after the application thereto of the proceeds of sale of the lands and other property by which it was secured, a charge upon the general fund of said company in the hands of the receiver, and did not make it a charge upon the earnings arising from the operation of the properties in the hands of the receiver, unless earnings would be included in the term 'remaining assets,' as used in the part of the judgment quoted on page 3 of the brief for appellant.

"Second. The statement in appellant's brief that it filed a petition alleging that the value of its security had been depreciated by the use of the property by the receiver is not strictly correct. In its petition the principal claim upon which it based its right to have priority of payment out of the net earnings arising from the operation by the receiver of the properties of the Tyler County Land & Lumber Company was that when the receiver took charge of the property there was a large amount of purchasable timber on lands adjoining the lands on which appellant had a lien, and that though said adjoining lands were not owned by said company, yet by the purchase of said timber by the receiver, and the cutting of same into lumber by him, said sawmill plant, instead of being surrounded by a large quantity of available and purchasable saw timber, became and is surrounded by land from which all the saw timber had been cut, wherefore the value of the sawmill, land, etc., upon which appellant had a lien was greatly depreciated in value."

The second assignment of error is that the court erred in sustaining the general exceptions to the petition filed June 10, 1909. Inasmuch as the appeal bond has no reference to this order, it was not appealed from.

The first assignment of error deals with the final order of distribution of June 29th, which was appealed from. The third proposition under this assignment is that it having been adjudged by the Court of Civil Appeals, on the former appeal, that after crediting the proceeds of intervener's sale, the balance remaining due of the principal, interest, and attorney's fees should be a charge on the general fund, the matter was res adjudicata, and appellant is entitled to have the directions and instructions of the court observed and followed by the trial court in the entry of the final decree of distribution. The fourth proposition under the same assignment is in substance that it was adjudged by the final decree, rendered, upon appellant's intervention, by the district court at the January term, 1909, in pursuance of the adjudication by the Court of Civil Appeals that as to any balance remaining due appellant upon its debt, interest, and attorney's fees up to the date of the appointment of the receiver, after crediting the proper proportion of the proceeds of the sale of its security, it should be entitled to share as an unsecured creditor in the remaining assets of the Tyler County Land & Lumber Company, and, no appeal having been taken from said judgment and the term of the court at which it was entered having ended, the matter was res adjudicata, and the appellant is entitled as to said balance to share as an unsecured creditor in all the remaining assets of which the net earnings during the receivership are a part.

In the final order of distribution which was on June 29, 1909, the court appears to have construed the said judgment upon appellant's intervention in the use of the term "remaining assets" as not embracing the fund in the hands of the receiver which arose from net earnings, and distinguished between "general fund" and "remaining assets" on the one hand, and "net earnings" on the other, as will be seen from the following quotation therefrom: "And it appearing to the court that during the pendency of this cause the said receiver has by the operation of said sawmill, planing mill, and other ma-

chinery on said land earned a large amount of money over and above the expenses of such operations and which earnings are hereinafter referred to as 'net earnings,' and the court therefore finds that the said First National Bank of Houston is not entitled to participate as a creditor in the distribution of that part of the assets in the hands of said receiver consisting of such net earnings, but as to said sum of $85,713.93 it shall be entitled to share as an unsecured creditor in the remaining assets of the Tyler Land & Lumber Company, not including said net earnings."

The final order or judgment on appellant's intervention on February 10, 1909, shows the adjudication by the Court of Civil Appeals to have been as follows: "And it appearing to the court that on the 27th day of June, 1908, a judgment was rendered herein by this court upon said intervention, from which judgment an appeal was taken by the said First National Bank of Houston, and that on the 25th day of November, 1908, a judgment was rendered and entered in the Court of Civil Appeals for the First Supreme Judicial District of Texas, at Galveston, wherein it was adjudged and ordered that the judgment of this court entered herein on the 27th day of June, 1908, upon said intervention be reversed, and the cause remanded, with instructions to the trial court to allow interest and attorney's fees upon all of the notes sued on in said intervention in accordance with their terms, to be satisfied out of the proceeds of the securities, respectively, and that in the event said proceeds are sufficient to pay said entire amount, then the same shall be prorated between the amounts due as principal, interest up to the date of the appointment of the receiver, and attorney's fees, and the amount of interest accruing after said date in the proportion which said respective amounts bear to their sum, and the balance remaining due of the first amount only be a charge on the general fund, but if there should be, after payment in full of all claims and expenses, a surplus to be returned to the stockholders, then all interest to the date of the payment shall be paid before any surplus is returned to them."

The judgment upon the intervention, rendered in view of said instruction of the Court of Civil Appeals, was as follows: "If, after the payment out of the proceeds of the sale of said tracts of land and other property belonging to said Tyler County Land & Lumber Company of the amount of the indebtedness herein adjudged against the said Tyler County Land & Lumber Company, there shall remain a surplus of said proceeds, such surplus shall be held and retained by the receiver herein, subject to the further orders of this court, but if the proceeds of said sale shall be insufficient to pay off and satisfy said indebtedness herein adjudged against said Tyler County Land & Lum-ber Company, then the same shall be prorated between the amount due as principal and interest up to the date of the appointment of a receiver, viz., February 14, 1905, and attorney's fees, which total amount is the sum of one hundred and five thousand and eighty-seven and 98/100 dollars and the amount of interest accruing after said date which amount is the sum of thirty thousand five hundred and nineteen and 31/100 dollars in the proportion which said respective amounts bear to their sum, and the balance remaining due on the first amount only to be a charge on the general fund, and the said intervener as to such balance remaining due of said first amount shall be entitled to share as an unsecured creditor in the remaining assets of said Tyler County Land & Lumber Company. But if there should be after payment in full of all claims and expenses, a surplus to be returned to the stockholders, then all interest to date of payment shall be paid before any surplus is returned to them."

The judgment of February 10, 1909, was a final adjudication, and settled the right for or against the First National Bank of Houston as to its status with reference to sharing in the funds in the hands of the receiver. Fagan & Osgood v. Boyle, 65 Tex. 331; Malone v. Johnson, 45 Tex. Civ. App. 604, 101 S. W. 505. The Court of Civil Appeals by its direction made the balance a charge on the general fund. In pursuance of this the district court entered judgment adjudicating that appellant's balance should be a charge on the general fund, and entitled to share as an unsecured creditor in the remaining assets of the Tyler County Land & Lumber Company.

There appears to have been in the hands of the receiver a fund representing net assets derived by the receiver from his operation of the Tyler County Land & Lumber Company's property which came into his hands. Also a fund derived by him from the proceeds of the property of said company. The decree appealed from admits appellant to share as an unsecured creditor in the latter fund for the balance of its claim, but denies it the right to share as an unsecured creditor in the "net earnings" fund. The question is, Was this denial in contravention of what was adjudicated by the judgment of February 10, 1909? We think not.

Article 1490, Batts' Rev. St. 1895: "All judgments, claims or causes of action when determined, existing against any corporation at the time of the appointment of a receiver, shall be paid out of the earnings of such corporation while in the hands of the receiver, to the exclusion of mortgage action; and the same shall be a lien on such earnings." The effect of this article is to create and set aside as a fund devoted to the unsecured creditors of the corporation, the net earnings of the receiver. In the case of Randolph v. Trust Co., 91 Tex. 605, 44 S. W. 70,

it is referred to as the "net earnings fund." The statute, in its effect, distinguishes this fund from funds derived from and representing the assets of the corporation taken by the receiver. Consequently there was no error committed by the trial court in construing the decree of February 10th, in its reference to the "remaining assets," as not dealing with the net earnings.

The first and second propositions under the first assignment proceed upon the theory that appellant was not a mortgage creditor within the meaning of said enactment. In our opinion the act should be given a fair and liberal construction to effect its evident purpose, and should therefore be held to refer to any form of security which is in effect and substance a mortgage, which appellant's claim was. This being so, appellant's status and the status of the net earnings, if any should result, were fixed at the date of the receivership, or, properly speaking, when appellant, by its intervention, resorted to mortgage action for the enforcement of its debt and the event of appellant holding an unsatisfied balance when the foreclosure was completed did not change this status.

The article quoted cannot be limited in its application to mortgages given by railway companies to secure its indebtedness, for, in terms, it relates to all corporations. Nor can it be said to apply only to cases in which the mortgage is upon the entire property of the corporation, and not to cases where the mortgage is on part of the property. It evidently was intended to apply to any creditor insisting on mortgage security. When he appears in the receivership and insists upon the enforcement of his debt by mortgage action, he takes the place assigned to him by said statute, with reference to the net earnings.

The judgment is affirmed.