**MAYOTOWN LUMBER CO. et al. v. NACOG-DOCHES GROCERY CO. et al.\***
**(No. 277–3512.)**

(Commission of Appeals of Texas, Section A. Jan. 25, 1922.)

1. **Corporations** ⬅️566(1)—**Persons procuring receivership and bondholders privies to such action liable for debts incurred in continuing business, and such debts should take precedence.**

As a lumber company operating sawmills, etc., was a private corporation, and as no public interest was involved in the continued operation of its mills, responsibility for such continued operation by a receiver rested on plaintiffs, who procured his appointment with power to continue operations, and bondholders who were privies to such action, and any unpaid indebtedness of the receiver caused by insufficiency of earnings should, on the ground of equitable estoppel, take precedence over their liens, though vested prior to the receivership.

**2. Corporations ⬥⟹566(1)—Creditors of receiver held entitled to maintain separate suit against lienholders to establish precedence.**

Where persons to whom the receiver of a lumber company incurred debts in operating the company's mills were given no notice of a sale of the properties, and had been assured by the receiver that full payment of their claim would be provided for, they were not required to anticipate that such provision would not be made; and where they did not discover until some time after the sale that their claims would not be paid in full, they were not required to make bondholders, who were privies to the appointment of the receiver, parties to the original suit, but might bring a separate suit to establish their right of precedence over the bondholders.

**3. Corporations ⬥⟹566(1)—Preferred creditors of receiver held entitled to personal judgment against bondholders.**

Where property of a lumber company was sold subject to a mortgage, without making adequate provision for the payment of debts incurred by a receiver in carrying on the company's business, and thereafter the trustee under the mortgage received as payment on the principal and interest of the bonds more than enough to pay the unpaid claims, the creditors of the receiver were entitled to a personal judgment for the amount of their claims against the bondholders, who were privies to the appointment of the receiver.

**4. Corporations ⬥⟹566(1)—Bondholders not entitled to complain that creditors entitled to precedence accepted part payment from receiver.**

Where property of a lumber company was sold without adequate provision being made for the payment of debts incurred by a receiver in carrying on the company's business, it was the creditors' duty to exhaust the provisions made by the court for the satisfaction of their claims before seeking to enforce their equitable right to precedence in payment against the bondholders, who were privies to the appointment of the receiver, and the bondholders could not complain that they accepted as a payment thereon all the receiver was able to pay.

**5. Parties ⬥⟹29—Exceptions for nonjoinder of parties properly overruled when liability not shown by pleadings.**

Though holders of labor liens bringing a suit against a company in which a receiver was appointed, with power to carry on the business, were subject to have payment of their claims postponed until debts contracted by the receiver were paid in full, where the pleadings of plaintiff and interveners in a suit to enforce such right against bondholders did not show that such lienholders had received anything on their respective claims, exceptions because they were not made parties were properly overruled.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by the Nacogdoches Grocery Company and others against the Mayotown Lum-

ber Company and others. A judgment for plaintiffs was reversed in part and affirmed in part by the Court of Civil Appeals (221 S. W. 644), and certain defendants bring error. Affirmed.

Hutcheson, Bryan & Dyess, of Houston, for plaintiffs in error.

Geo. H. Matthews, of Nacogdoches, and Woods, Barkley & King, of Houston, for defendants in error.

GALLAGHER, J. The Nacogdoches Grocery Company brought this suit in the district court of Nacogdoches county against June C. Harris, as receiver of the Attoyac River Lumber Company, the Bankers' Trust Company, as trustee, the First National Bank of Houston, the Union National Bank of Houston, the Lumbermen's National Bank of Houston, S. F. Carter, the Hilgard Lumber Company, the Nacogdoches Lumber Company, and Lewis R. Bryan, as trustee, to recover a balance due said grocery company for supplies furnished by them to said Harris as receiver of the Attoyac River Lumber Company under appointment of said court in a suit theretofore and then pending therein, entitled J. S. Besser et al. v. Attoyac River Lumber Company. The Burrus Mill & Elevator Company and George E. Dilley & Son intervened, and sued the same defendants for supplies furnished by them, respectively, to said Harris as such receiver. The Bankers' Trust Company having resigned, and having been succeeded by Lewis R. Bryan, as trustee, disclaimed, and passed out of the case.

The case was tried before the court, and judgment rendered in favor of plaintiff and interveners against June C. Harris, as receiver of Attoyac River Lumber Company, and against S. F. Carter, Lumbermen's National Bank of Houston, Union National Bank of Houston, and First National Bank of Houston jointly and severally for the amounts sued for by said plaintiffs and interveners, respectively, with legal interest thereon, to enforce which judgment execution was awarded against all said parties except Harris, receiver.

The court further adjudged in favor of said plaintiff and interveners a statutory and equitable lien, and foreclosed the same against all said defendants on all the property of the Attoyac River Lumber Company sold and delivered by Harris as such receiver to the Hilgard Lumber Company, and by it sold and delivered to the Mayotown Lumber Company, and directed the sale of the same by proper process to discharge said judgments.

The trial court, upon request, filed his conclusions of fact, from which we have selected and set out such facts as are deemed neces-

---

sary to an understanding of the issues hereinafter discussed.

On and prior to August 1, 1913, the Attoyac River Lumber Company was incorporated under the laws of the state of Texas for the purposes of operating a sawmill and planing mill, and for the manufacture of lumber. On August 1, 1914, said lumber company issued its 300 bonds of the denomination of $1,000 each, which it secured by deed of trust on all its properties, consisting of its mills, appliances, and accessories of every description, and its timber lands and timber rights on the lands of others, in which instrument the Bankers' Trust Company was made trustee. These bonds were purchased by the defendant banks and S. F. Carter in the following proportions: Lumbermen's National Bank, $70,000; Union National Bank, $75,000; First National Bank, $100,000; and S. F. Carter, $55,000. At the time S. F. Carter, who was the president of the Lumbermen's National Bank, personally guaranteed in writing the payment of the bonds purchased by the other two banks, and such guaranty was relied on by said banks.

On January 4, 1915, on the petition of J. S. Besser and three others, who held labor liens in the aggregate amount of $1,291.31, which had been fixed against the property of the lumber company, June C. Harris was appointed receiver of said lumber company, and he immediately qualified and took possession of its properties.

At the request of the creditors, including the holders of said bonds, the court authorized the receiver to operate the properties of said lumber company, and he did so operate the same from January 6, 1915, until April 28, 1917. The holders of such bonds were not parties to said suit, but were privies to, acquiesced in, agreed and consented to the appointment of the receiver, and the operation of the properties by him. In the course of such operation the receiver incurred debts for money, labor, supplies, machinery, etc., and the amount thereof unpaid at the date of the sale of the property by the receiver was approximately $71,000.

On April 28, 1917, the receiver filed an application for authority to sell all the right, title, and interest held by him as such receiver and by the Attoyac River Lumber Company in all its properties, subject to such deed of trust securing said bonds, and such purchase-money liens as might exist, stating in such application that a price sufficient could be obtained to pay all his creditors, as such receiver, in full. In pursuance of a report of sale duly made and confirmed by the court, the receiver, on May 3, 1917, conveyed to the purchaser, the Hilgard Lumber Company, all the right, title and interest of himself as receiver and of said Attoyac River Lumber Company in and to all its properties,

subject to such liens, for a cash consideration of $62,500, and the properties so conveyed were immediately delivered to the purchaser, and were at that time of the reasonable market value of $350,000. No notice of any of these proceedings was given to the creditors of the receiver. The Hilgard Lumber Company subsequently sold and delivered said properties to the Mayotown Lumber Company.

The receiver at the time of such sale was indebted to plaintiff and intervener in this suit for supplies furnished him as such receiver. They were in no way privy to said sale, and interveners were not at the time thereof parties by intervention, or otherwise, to said suit. The receiver assured them, and all his other creditors, that they would be paid in full.

The receiver was mistaken in the amount of his indebtedness, and all the funds at his command, including the proceeds of such sale, were insufficient to discharge his debts as such receiver in full, but, when distributed pro rata among his supply creditors, discharged only about 70 per cent. of their claims against him. After the application of the payments so distributed, the sum of $3,050.50 due the Nacogdoches Grocery Company, plaintiff herein, the sum of $348.75 due George Dilley & Son, the sum of $667.18 due Burrus Mill & Elevator Company, interveners herein, remained unpaid, and none of such creditors discovered that they would not be paid in full as promised, until about June 1, 1917.

The deed of trust subject to which the said properties were sold provided that the lumber company might cut timber from the mortgaged premises, convert the same into lumber, and sell such lumber, but required that the sum of $3 for every 1,000 feet of merchantable lumber cut from the timber covered by the mortgage should be paid to the trustee as a sinking fund, to be applied, first, to the payment of interest on said bonds, and, second, to the payment or redemption thereof.

The court found that the receiver paid out of the earnings received by him in the operation of said properties the sum of $25,425.57 as interest and $42,000 as principal on the bonds secured by said deed of trust. The court further found that the receiver paid out of such earnings $11,444.74 on labor liens fixed prior to the appointment of the receiver, $9,000 for premiums on insurance on the properties in his hands, $8,095.58 for taxes on said properties, and that he expended $28,307.99 in improvements and betterments on said properties.

The court further found that, subsequent to said sale, and prior to the trial of this case, said purchaser and its said vendee had paid over to the trustee and bondholders the

sum of $24,972.48 on account of timber cut and manufactured by them from the mortgaged premises. The court further found that at the time of the receiver's sale the First National Bank held unpaid 75 of said bonds, the Union National Bank, 55 of said bonds, the Lumbermen's National Bank, 51 of said bonds, and 'S. F. Carter, 48 of said bonds.

The receiver had not been discharged at the time of trial, but it was shown that he had sold, conveyed, and delivered all the property involved in such receivership, and had distributed all the funds in his hands.

The Court of Civil Appeals held that there were no net earnings resulting from the operation of the properties by the receiver. All the defendants in said judgment joined in a petition to have the same reviewed by the Court of Civil Appeals on writ of error.

The Court of Civil Appeals reversed the judgment against the Hilgard Lumber Company and the Mayotown Lumber Company, and rendered judgment in their favor, ordered Lewis R. Bryan, trustee for said bondholders, to pay to plaintiff and interveners in this suit, pro rata, out of the first moneys coming into his hands as such trustee, the amount of their respective claims, and affirmed the judgment of the district court against the bondholders and receiver. 221 S. W. 644. The said holders of said unpaid bonds, and their trustee, Lewis R. Bryan, applied for writ of error, which was granted by the Supreme Court, and the case is before us for hearing on said writ.

It is contended by plaintiffs in error that the right of supply creditors to a preference in the payment of their claims, when such right exists, arises out of and is dependent on an order of the court in the receivership proceedings making the same a charge upon some particular properties or fund, and that such right cannot be established or enforced in a separate suit. The findings of the trial court and the Court of Civil Appeals that the defendant bondholders were privies to the receivership are conclusive on this court, and we do not understand plaintiffs in error to question that such is their effect.

[1] The Attoyac River Lumber Company was a private corporation, and no public interest was involved in the continued operation of its mills. The district court of Nacogdoches county was under no duty to cause them to be operated by the receiver. The responsibility for such continued operation rests on the plaintiffs, who procured his appointment with such powers, and the bondholders who were privies to such action. As to them, any unpaid indebtedness of the receiver caused by insufficiency of earnings should, on the ground of equitable estoppel, take precedence over their liens, notwithstanding such liens were vested at and prior to the receivership. Craver v. Greer et al., 107 Tex. 356, 364, 179 S. W. 862, 866. We quote from the opinion in that case as follows:

"Where a lienholder procures the appointment of a receiver with the power to operate the property which is subject to his lien, in a continuance of the business to which it is devoted, it is only just that the consequent expenses should take precedence over his lien, since it must be anticipated that such operation will be attended with cost, and possibly in excess of the income. Heisen v. Binz, 124 Ind. 284, 45 N. E. 104. The same rule should be applied to a party who, while not directly the applicant upon whose petition the receiver is appointed, is privy to the action which results in the appointment."

Plaintiff and intervener had an equitable right to precedence in the payment of their claims over the payment of principal and interest on the bonds. Had the bondholders been parties to the suit in which the receivership was pending, such right to precedence in payment should have been established and enforced by an order or judgment in that suit, as was done in the case of Randolph v. Trust Co., 91 Tex. 605, 44 S. W. 70. In such case, however, the order or judgment would not have created the right to precedence in payment, but would only have established the existence of such right and provided for its enforcement. Texas Pacific Railway Co. v. Johnson, 76 Tex. 421, 434, 13 S. W. 463, 18 Am. St. Rep. 60.

In Railway v. Johnson, supra, the railroad was returned to the railway company without sale, charged with: (1) All traffic liability due connecting lines; (2) all contracts made by the receiver; (3) all judgments which might be rendered in favor of persons interested in the cause where the receiver was appointed before February 1, 1889, and free from all other demands and claims. Johnson sued for damages for personal injuries alleged to have been sustained as the result of negligence of the receiver while operating the road. When the receiver was discharged he made the railway company a party defendant, and recovered judgment against it for $15,000. The Supreme Court, in affirming the case, based his right to such judgment on the fact that net earnings in excess of the amount of such judgment had been applied to betterments, and that the railway company on that account received the properties charged with the satisfaction of his claim. The railway company claimed that it was relieved of liability to Johnson because he had not established his claim by intervention as required by the order of court above referred to, but the Supreme Court held his lien on the earnings could no more be destroyed by such order than could his suit for such damages then pending be thereby abated or rendered fruitless. John-

son was not a party to the suit in which the receiver was appointed. We quote from the opinion in the case as follows:

"So much of the order relied on as declared that the property in hands of the company should be held subject to all claims which might have been enforced against it while in the custody of the court, its jurisdiction over the property for the purposes of this case being conceded, was obviously correct, and the company having so received it must so hold it.

"That order, however, is not the true foundation on which the charge of lien rests. It rests on the statute; *but in the absence of this would rest on the existence of facts which under general principles applicable create such a charge or lien, and no order of any court can change the effect of such facts or affect one not a party to the proceeding in which the order was made.*" (Italics ours.)

The relief accorded to Johnson seems to have been a plain personal judgment against the railway company, enforceable by execution. The case was carried to the Supreme Court of the United States, and there affirmed. 151 U. S. 81, 14 Sup. Ct. 250, 38 L. Ed. 81.

In Railway Co. v. Crawford, 88 Tex. 277, 31 S. W. 176, 28 L. R. A. 761, 53 Am. St. Rep. 752, a sale of all the property of the railroad had been made by a receiver, and, the purchaser having complied with the terms thereof, the court ordered the receiver to deliver possession of the property to him. This order was suspended by an appeal for more than two years. During the pendency of the appeal the receiver remained in possession of the road and continued to operate it. The order of the court under which the road was finally turned over to the purchaser provided that all claims and demands of every nature arising out of the management and operation of the property, upon which any claim of lien against the purchaser, the receiver, or the properties might be based, whether against the receiver or the railway company, or the mortgagor company, should be presented and prosecuted by intervention in that court prior to the 1st day of October, 1893, and that all claims and demands not so presented by intervention should be declared stale, and should not be enforced against the property delivered to the purchaser, or the funds in the hands of the receiver. The receiver, in pursuance of this order. delivered the road to the purchaser, and he conveyed and delivered it to the defendant railway company. After the sale of the road, and before its delivery to the purchaser, Crawford was injured while in the employ of the receiver, and brought suit against him in his capacity as such, for damages. This suit was pending at the time the road was delivered to the purchaser, and at the time the same was by him conveyed and delivered to the defendant railway company.

Crawford made said railway company a party defendant, and alleged that surplus earnings subject to the payment of such judgment as he might recover had been applied to the improvement of the road. He recovered judgment against the railway company, and it appealed.

The Supreme Court, in answering certified questions, held that, Crawford not having complied with the requirement of the order of the court under which the property was turned over by the receiver to the purchaser by presenting his claim by intervention, he could not hold the purchaser under the terms of that order, but that the purchaser was liable to him independent of the order of the court in the receivership case if earnings of the receivership after the sale in excess of the amount of his claim had been diverted to improvements, and the purchaser thereby benefited.

The Supreme Court further held that, the Circuit Court of the United States which appointed the receiver having discharged him, and turned the property over to the purchaser, its jurisdiction ceased, and the state court in which Crawford sued had power to adjudicate the rights of the parties and enforce its own judgment, and that his claim was not affected by a failure to present it to the court which appointed the receiver. The relief sought by Crawford and thus approved was a personal judgment, enforceable by execution. The case was carried to the Supreme Court on writ of error, and there rendered against Crawford on the ground that he was guilty of contributory negligence as a matter of law, but the court adhered to its rulings above recited. Crawford v. Railway, 89 Tex. 89, 33 S. W. 534.

In the case of Texas Co. v. International & Great Northern Ry. Co., 150 C. C. A. 571, 237 Fed. 921, 940, the Texas Company intervened in a suit to foreclose a mortgage securing a second series of bonds, in which suit a receivership was pending, and sought the payment of its claim as a supply creditor, out of the earnings of the receiver. A part of such earnings had theretofore been diverted to pay interest on a series of first mortgage bonds. The Equitable Trust Company, trustee in the first mortgage, was not a party to the suit.

The Texas Company thereafter, while such intervention was pending, brought a separate suit against the plaintiff and defendant in the original suit and the receiver appointed by the court therein, joining the Equitable Trust Company as a party defendant, and sought satisfaction of its claim out of the earnings and the property in preference and prior to the lien of both the first and second mortgage bonds, on account of the fact that earnings had been diverted to the payment of interest on the first mortgage bonds. The

Circuit Court of Appeals for the Fifth Circuit sustained its right to prosecute such separate suit on the ground that the Equitable Trust Company was not a party to the original suit, but was a necessary party to the relief sought.

[2] The court found that no notice of the sale of the properties of the Attoyac River Lumber Company, or any of the proceedings connected therewith, was given to the creditors of the receiver, and that he had assured them that full payment of their claims would be provided for. We do not think that plaintiff or interveners were required to anticipate that such provision would not be made, and that the court would confirm a sale of the property, subject to the full payment of the bonds, and surrender it to the purchaser without making adequate provision for the protection.

The property was conveyed and possession thereof surrendered to the purchaser on May 3, 1917. The court found that plaintiff and interveners did not discover until about the 1st day of June thereafter that their claims would not be paid in full as promised. The court having surrendered its control of the properties to the purchaser, and the receiver under its direction having distributed the proceeds of the sale, no useful purpose could be served by requiring plaintiff and interveners to assert their equitable right to precedence in the payment of their claims over the payment of principal and interest on such bonds by making the bondholders and the substituted trustee parties to the original suit, and litigating such right to precedence therein.

[3] In Railway v. Johnson, supra, and Railway v. Crawford, supra, the equity asserted was the right to follow earnings of the receivership which had been diverted, and to hold the parties receiving the benefit of such diversion responsible therefor, and our Supreme Court held in both cases that this might be done in a separate and independent suit by the recovery of a personal judgment enforceable by execution. We think these cases furnish by analogy the proper rule of procedure for the assertion by plaintiff and interveners of their equitable right to precedence in the payment of their claims. The court having found that the trustee had, since the property was turned over to the purchaser, received from it and its vendee as payment on principal and interest on the bonds held by plaintiffs in error several times the amount of the unpaid claims asserted by plaintiff and interveners in this case, the latter were entitled under the findings of the court herein to a personal judgment against said bondholders for the amount of their respective claims.

The conclusion just expressed is not in conflict with Railway v. McFadden Bros.,

89 Tex. 137, 145, 32 S. W. 526. In that case the railroad was, under order of the court, turned over by the receiver to the owner without sale, and it was sought to hold the owner and its vendee liable in damages for the loss of certain cotton, alleged to have resulted from the negligence of the receivers. There was no claim of collusion between the creditors, who applied for and secured the appointment of the receiver, and the defendant railway company, and no allegation that net earnings had been diverted and applied to the improvement of the road during the receivership. The Supreme Court in that case recognized that in such cases the court in which the receivership was pending, having authorized the receiver to take charge of, control, and operate the railroad, could in the exercise of its judicial discretion make the liabilities incurred by the receiver a charge on the corpus of the property, and on sale thereof direct their payment out of the proceeds, and declared that the charge so created in such cases proceeded from the order of the court, and did not arise by operation of law.

The owner of property in the hands of a receiver, in the absence of collusion, is an adverse litigant, and not in privity with the receiver. The Supreme Court in that case was dealing with the question of charging the liabilities of the receiver upon the corpus of the property as against the owner. The defendant railway company not being privy to the appointment of the receiver and the resulting liabilities, creditors of the receiver had no equitable right to the satisfaction of their claims out of its interest in the property. The power of the court in such cases, in the exercise of a sound judicial discretion, to so provide grows out of the duty which the defendant as a public service corporation owes to the public and the public interest in the continued performance of the same, or the necessity for continued operation of the property to preserve its value. Craver v. Greer, supra; Ellis v. Water Co., 86 Tex. 109, 111, 112, 23 S. W. 858; Clint, Receiver, v. Houston Ice & Brewing Co., 106 Tex. 508, 509, 169 S. W. 411; 23 Cyc. pp. 353, 354.

Plaintiffs and interveners are not seeking satisfaction of their claims out of the Attoyac River Lumber Co. It was divested of all interest in the property by the sale, and is not complaining of the application of the proceeds. The rights of the bondholders in the property were not affected by the sale, and it is out of their rights in the property that plaintiff and interveners are seeking satisfaction of their claims, based on their equitable right to precedence in payment.

The Supreme Court, in Railway v. McFadden Bros., supra, further held, following Railway v. Gay, 86 Tex. 571, 26 S. W. 599, 25

L. R. A. 52, that if the railway company, defendant in the receivership, connived with the petitioning creditors in procuring the appointment of the receiver and the operation of the road by him, and the road was turned back to such company without sale, it was liable for torts committed by the receiver's servants in operating the road. Such liability is based on the doctrine of an equitable estoppel similar to that operating in favor of plaintiffs and interveners and against the bondholders in this case.

This case is distinguishable from the case of Atlantic Trust Co. v. Chapman, 208 U. S. 360, 28 Sup. Ct. 406, 52 L. Ed. 528, 13 Ann. Cas. 1155, also relied upon by plaintiffs in error. In that case the Atlantic Trust Company, trustee in a mortgage to secure certain bonds constituting a valid claim against an irrigation company and a valid lien on its properties, caused the same to be placed in the hands of a receiver, and on final hearing secured judgment establishing the debt and foreclosing the lien so asserted. The assets of the company were found insufficient to pay the expenses of administering the receivership, and the receiver sought to compel the trust company, which had suffered the loss of the entire claim sued for, and received no benefit out of the properties of the defendant irrigation company, or the operation thereof, to pay as costs of court indebtedness incurred by the receiver amounting to $36,000, that being the amount in which the liabilities of the receiver exceeded his total receipts, both from operation of the properties and from the final sale thereof. The court held that, when neither the order appointing a receiver nor the order authorizing him to borrow money was conditioned on the plaintiff's being liable for the expense of the receivership, and when no circumstances appear which, upon equitable principles, would authorize the court to fix personal liability on the plaintiff therefor, the general rule should be applied, and such expenses charged upon the property without personal liability on the part of the plaintiff, and that under the facts of that case the trust company was not liable to personal judgment.

There is no attempt in this case to hold the bondholders personally liable beyond the sums they have received or may receive out of the properties formerly operated by the receiver. They having already received out of such property several times the aggregate amount recovered by plaintiffs and interveners, they are personally liable, under the authorities cited above, for the judgment recovered against them.

[4] We do not see how plaintiffs in error can complain of the fact that plaintiff and interveners presented their claims to the receiver and accepted as a payment thereon all the receiver was able to pay. Had they not done so, plaintiffs in error would have had just cause for complaint. It was their duty to exhaust the provisions made by the court for the satisfaction of their claims before seeking to enforce their equitable right to precedence in payment against the bondholders. They were therefore not estopped to enforce such right in this suit.

[5] Besser and others, plaintiffs in the receivership suit, upon whose application a receiver was appointed, were, like the bondholders, subject to have payment of their claims postponed until the supply creditors of the receiver were paid in full. However, the pleadings of plaintiffs and interveners did not show the names of such plaintiffs, nor that they, or either of them, ever received anything on their respective claims. The exceptions to such pleadings on the ground that Besser and others were not made parties to this suit were therefore properly overruled.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.